OPINION OF THE COURT
Lee Towne Adams, J.
Each of the above-entitled actions involves a dispute concerning gas and oil rights in Chautauqua County. On motion of the plaintiff they have been joined for purposes of the arguments on motions, and if the complaints survive, for trial. This joinder was accomplished at oral argument on the motions of plaintiff for a temporary restraining order, and/or a temporary injunction, and for joinder. At *25 the same time defendants, Consolidated Gas Supply Corporation and Doran and Associates, Inc., moved to dismiss the complaints. At the argument the defendants Nagel in action No. 6 appeared in opposition to plaintiff’s motion.
The facts are as follows. In 1972 defendant Consolidated’s predecessor acquired a large number of gas and oil leases covering the lands described in the various complaints and more. Each lease contained the following provision for unitization: “For the purpose of conserving the interest of the parties hereto, and protecting said premises, and the oil or gas field within which the same are comprehended, from unnecessary and wasteful drilling and undue depletion of its resources, lessor further grants to the lessee, its heirs and assigns, the right to consolidate the above described premises or any part thereof at the option of the lessee with others to form a unit not to exceed 640 acres for development (to the same effect as if said premises together with others in the area had been jointly leased by various lessors to the lessee as a single undivided tract) and in such event lessor agrees to accept, in lieu of the royalty hereinbefore recited, such proportion of one-eighth (Vs) of the oil or gas marketed from the unitized area as his acreage included therein bears to the total acreage of the unitized area.” The leases, by their terms, were to expire in October of 1982 unless drilling for gas or oil had commenced prior to the expiration date. If drilling has commenced, the leases last as long as gas or oil is produced for market. Consolidated, which had acquired the leases in 1973, assigned many of them to Doran and Associates in 1982. Doran and Consolidated filed unit operation designations covering lands described in the eight complaints. These were filed in the Chautauqua County Clerk’s office before the expiration of the Consolidated leases (just barely before). Doran filed the necessary plot maps, and applied for and received permits to drill wells in accordance with 6 NYCRR 552.2, and drilled a well in each of the units before the expiration of the leases.
In the meantime, in 1981, plaintiff had acquired top leases covering portions of the lands described in defendants’ unitization designations. These leases were somewhat in the nature of a springing future interest, for they *26 were to ripen into possessory interests only upon the expiration of defendants’ lease, if such leases should, in fact, expire. Under the terms of plaintiff’s top leases it must commence drilling not later than 1983 or the leases will expire. Defendants’ unitization and drilling, if proper, have kept all its leases alive and Envirogas’ top leases have become valueless.
Plaintiff accordingly seeks a declaratory judgment declaring defendants’ unitization invalid. It also seeks to enjoin forthwith any further drilling on properties covered by the Envirogas top lease. Its claim is set forth in paragraphs 19 through 24 of action No. 1. Mutatis mutandi, it is the same in all actions. Those paragraphs in action No. 1 read as follows:
“19. Upon information and belief, the sole purpose of Doran and Consolidated in entering into said Unit Operation Designation was to attempt to prevent the expiration of the primary lease terms on the tracts owned by Tenpas, Hayes and DeShazer so as to attempt to prevent the Envirogas leases with Tenpas, Hayes and DeShazer from taking effect.
“20. Upon information and belief, Consolidated and Do-ran knew or should have known that, in entering the Unit Operation Designation, the 510 acres subjected thereto could not be effectively and efficiently developed or produced as a single drilling or production unit, and, therefore, the pooling or unitization of said tracts was not for the purpose of conserving the interests of the. lessees or for protecting the premises from unnecessary or wasteful drilling and undue depletion of resources.
“21. In attempting to create the aforesaid single 510-acre drilling or production unit, Doran and Consolidated have failed and neglected to act fairly and in good faith with due regard for the interests of Tenpas, Martin, Hayes, De-Shazer and Envirogas, and they have acted contrary to and/or in excess of the authority granted in the pooling and unitization clauses in the leases referred to in paragraph 8 hereof.
“22. In attempting to create the aforesaid single 510-acre drilling or production unit, Doran and Consolidated have failed to exercise their rights under the subject leases in *27 accordance with the standards and practices of a prudent operator.
“23. As a result of the foregoing, the Unit Operation Designation must be declared null, void and of no effect and the leases held by Consolidated and/or Doran on the aforesaid tracts of land owned by Tenpas, Hayes and De-Shazer must be declared cancelled, terminated and/or expired.
“24. During the pendency of this action, Doran and Consolidated must be enjoined from conducting any drilling or production activities on the tracts owned by Tenpas, Hayes and DeShazer in order to prevent severe and irreparable harm and damage to the interests of Envirogas as the current oil and gas lessee of said premises.”
Plaintiff has submitted an affidavit of geologist, Arthur N. Van Tyne, which shows, plaintiff alleges, that “none of the eight drilling and production units in issue will conserve the best interests of the parties to the leases and protect the subject premises from unnecessary and wasteful drilling. Quite to the contrary, the production units will serve only the interests of Doran/Consolidated by holding the acreage for future development at some unspecified time, without even the continuing need to make delay rental payments on the undrilled acreage. The units will work to the serious detriment of the undrilled acreage”. Defendant has submitted an affidavit of geologist Thomas R Michael which, if accepted, refutes the claims of geologist Van Tyne.
Both plaintiff and defendant agree that the gas or oil below the ground is stored in what is called a tight sands formation. Wells drilled in such formation should be spaced to drain 80 acres for maximum drainage and tax consequences. 6 NYCRR 553.1 requires that wells be drilled not closer than one furlong to a boundary line and at least one-quarter mile away from any existent well. This fact, together with the topography of the lands, at times makes it difficult to obtain optimum drainage spacings of 80 acres. (Plaintiff’s expert holds that the optimum is 60-100 acres to be drained.)
Defendants Consolidated and Doran have moved to dismiss the actions, because, they say, plaintiff has no stand *28 ing and fails to state a cause of action. They further allege that plaintiff has an adequate remedy at law.
As a factual matter, if plaintiff’s request for a preliminary injunction is denied, which it must be, plaintiff will perforce be relegated to a complaint at law, since the expiration of its top leases draws nigh. Plaintiff must lose its demand for injunction because of the damage which would result to innocent landowners on whose properties wells are now drilled, and to innocent landowners whose properties have been unitized by defendants, but who have no top leases with plaintiff. Nevertheless, defendants are entitled to a declaration on their motion to dismiss.
Plaintiff, indeed, has an interest in the outcome of a lawsuit to declare defendants’ leases expired. But it has no standing to bring such a lawsuit. It is not the beneficiary of the implied covenant in every lease that unitization be done properly and fairly, to benefit landowners and the people of the State of New York by minimizing waste. The landowners directly involved have not brought suit. The State of New York has tacitly approved the unit designation by granting permits to drill when the maps showing well locations also show the unitized pool and the sites of proposed additional wells. Plaintiff is not the representative of the landowners; it is not the agent of the State.
In old England benefices were sometimes granted in reversion. The parson designate had no standing to appear in the Archdeacon’s Court or the Court of Arches to complain about the way the incumbent exercised his clerical functions. Yet he was interested in the outcome. Were the incumbent expelled, he could take early possession of the glebe and appurtenances without waiting for his predecessor to die.
Moreover, the well spacings proposed do not seem wasteful. The number of acres to be drained by one well range from 83 in action No. 1 through 91, 91, 97,102,106, 122 to 131 in action No. 8. If these proposed additional wells be not drilled in proper time, the lándowners will have rights of action. (Waste is defined at ECL 23-0101, subd 20.) The unit designations were filed; the wells were drilled. The leases continue. These are facts. Plaintiff is asking for this court to rule that the defendants should not have done *29 what they did, and, in effect, ex post facto, declare that since it was, as plaintiff says, done unfairly, ’twas never done at all. That will not be done.
It is obvious that had not defendants done what they did, they would have lost their leases. And were impure motives the only reason for unitization, landowners could properly have the unit declaration voided. (Boone v KerrMcGee Oil Inds., 217 F2d 63.) Here, though, defendant Doran does not plan to drain the unitized lands through one well only. The State of New York encourages pooling. (ECL 23-0501, 23-0701, 23-0901.)
Plaintiff’s motion for temporary restraining order is denied.
Defendant’s motion to dismiss is granted.