ENVIROGAS, INC., Appellant, v CONSOLIDATED GAS SUPPLY CORPORATION et al., Respondents, et al., Defendants. (And Seven Other Actions.)

Fourth Department, December 16, 1983

**APPEARANCES OF COUNSEL**

*Hodgson, Russ, Andrews, Woods & Goodyear* (*Daniel M. Darragh* and *Rick W. Kennedy* of counsel), for appellant.

*Fagan & Sheffield* (*Charles Edward Fagan* and *Paul H. Andrews* of counsel), for Consolidated Gas Supply Corporation and another, respondents.

*Erickson, Webb & Scolton* (*Bruce S. Scolton* of counsel), for Bryan D. Nagel and another, respondents.

**OPINION OF THE COURT**

DILLON, P. J.

In eight separate actions seeking, *inter alia,* declaratory judgments that oil and gas leases acquired by defendant

Consolidated Gas Supply Corporation (Consolidated) and subsequently assigned to defendant Doran & Associates, Inc. (Doran), have expired, Special Term (120 Misc 2d 24) denied plaintiff's motion for a preliminary injunction and granted defendants' motion to dismiss the complaints for failure to state causes of action (CPLR 3211, subd [a], par 7).[1] We conclude that the complaints should be reinstated.

In October, 1972 Consolidated's predecessor secured from various landowners several oil and gas leases of properties located in Chautauqua County. The leases, which were acquired by Consolidated in 1973, are for terms of 10 years "and as long thereafter as the said land is operated by Lessee in the search for or production of oil or gas, or as gas is found in paying quantities thereon or stored thereunder." Each lease contained a clause granting the lessee the right to "unitize" the demised parcel with other leased parcels in order to form a development unit not to exceed 640 acres.

Consolidated did nothing to exercise its rights under the leases prior to 1981, at which time plaintiff and several landowners executed "top" leases pertaining to the oil and gas in and upon many of the same properties. Each top lease was specifically made subject to "any prior, valid existing gas and oil lease". Thereafter Consolidated and Doran executed a "farm-out" agreement assigning 147 leases to Doran. Still later, and in some instances only days before their leases would expire, Consolidated and Doran executed eight "Unit Operation Designation[s]" under which several parcels were consolidated into eight separate units. Maps of the eight units were filed by Doran with the Department of Environmental Conservation (DEC)[2] and in the Chautauqua County Clerk's office. Although precisely when drilling took place does not appear in the record, Consolidated and Doran state on appeal that between June and October, 1982, one well was drilled on each unit; others are contemplated.

---

1. The eight actions were joined together for purposes of these motions.

2. The record contains an exchange of letters between Doran and a representative of the DEC from which defendants argue that DEC has approved Doran's voluntary unitization plan (see ECL 23-0701). These letters do little more than express an understanding of certain policies of DEC. Thus plaintiff is not limited in remedy to a proceeding under CPLR article 78 (see ECL 23-0307).

The complaints seek declarations that the unit operation designations are null and void and that Consolidated's leases of parcels on which there has been no drilling by Doran have expired.[3] Also sought is a permanent injunction restraining further drilling or production operations on previously undrilled tracts "during the unexpired term of the Envirogas oil and gas leases covering said tracts". It is alleged that the unit designations made by Consolidated/Doran are ineffective to keep the leases in force because they were made in derogation of their good-faith obligations to the landowners. Plaintiff asserts that the acreage of the designated units "could not be effectively and efficiently developed or produced as a single drilling or production unit, and therefore, the pooling or unitization of said tracts was not for the purpose of * * * protecting the premises from unnecessary or wasteful drilling and undue depletion of resources." It is further alleged that Doran's sole purpose in creating the units was to keep the original leases in force and thus to prevent plaintiff's top leases from becoming effective.

In response to plaintiff's motion for a preliminary injunction, defendants cross-moved to dismiss the complaints "on grounds that they fail to state a cause of action and that Plaintiff has no standing to assert these actions" (see 3 Carmody-Wait 2d, NY Prac, § 19:52). Principally upon its finding that the underlying "leases continue" in force, Special Term agreed. The court reasoned that plaintiff was not the real party in interest since it held mere expectancies which had not sufficiently matured and that the right to claim failure of good-faith performance of the lease agreements belonged to the lessors, not the plaintiff. That ruling was premature. Plaintiff sues not as a protector of interests of the landowners but in its own right for a declaration that the prior leases have expired. The consequence obviously sought by plaintiff is the pursuit of its rights under the top leases. By dismissing the complaints, Special Term resolved the crucial issue in the litigation on the merits without affording plaintiff an opportunity to prove its case (see *Hurley v Hurley,* 50 NY2d 78, 83). Moreover, judgments rendered in these actions will bar

---

3. Plaintiff has also named all landowners as parties defendant.

further suits against these defendants on the same issue, and thus it cannot be said that plaintiff is not the real party in interest (see 3 Carmody-Wait 2d, NY Prac, § 19:21).

Provisions for both voluntary and involuntary pooling and creation of units for the production of oil and gas are now part of our statutory law (ECL art 23, tits 5, 7, 9). It is not disputed that the purposes of unitization and pooling agreements are to permit the greatest extraction of oil or gas with the least waste, to eliminate unnecessary drilling and to permit the most equitable distribution of royalties among the landowners (see ECL 23-0301). In jurisdictions where oil and gas wells are more numerous than in New York, it is the general rule that the lessee must exercise its pooling authority in good faith and as a prudent operator (Kuntz, Oil and Gas, § 48.3[g], pp 217-220; *Boone v Kerr-McGee Oil Inds.*, 217 F2d 63). The rule should also be applied in New York since every contract contains an implied covenant of good-faith performance and fair dealing (*Van Valkenburgh, Nooger & Neville v Hayden Pub. Co.*, 30 NY2d 34, 45; *Havel v Kelsey-Hayes Co.*, 83 AD2d 380, 382).

While the obligation of these defendants to deal in good faith runs primarily to the landowners, plaintiff's interests in the continuing viability of the Consolidated/Doran leases derive from the provisions in the top leases making them subject to prior, valid existing leases. In support of its claim, plaintiff demonstrated that one of the operation units is over 300 acres in size, three are over 400 acres and four are over 500 acres; and offered proof that in the geographic area one well could not drain more than 100 acres. The essence of plaintiff's claim is that Consolidated/Doran's method of unitization is a sham and that plaintiff is being deprived of its property rights under its top leases (see General Construction Law, § 39; *Wagner v Mallory*, 169 NY 501; *Backar v Western States Producing Co.*, 547 F2d 876). The primary 10-year terms of the leases to Consolidated having expired, plaintiff has demonstrated a legally protectable interest and that the controversy has sufficiently matured to ensure adversity. It is therefore entitled to bring these actions for declaratory judgment (see *Phelan v City of Buffalo*, 54 AD2d 262).

It was a proper exercise of discretion, however, to deny plaintiff's motion for a preliminary injunction. There was at least facial compliance by Consolidated/Doran with the unitization clauses of the leases, and plaintiff has not made a sufficient showing of the likelihood of its success on the merits (cf. *Gambar Enterprises v Kelly Servs.*, 69 AD2d 297, 306, 307).

Accordingly, the order granting defendants' motion to dismiss the complaints should be reversed, the motion should be denied, and the complaints should be reinstated. The order otherwise should be affirmed.

DOERR, DENMAN, O'DONNELL and MOULE, JJ., concur.

Order unanimously modified, and as modified affirmed, without costs, in accordance with the opinion by DILLON, P. J.