[804 NYS2d 465]

In the Matter of WESTERN LAND SERVICES, INC., et al.,
Appellants-Respondents, v DEPARTMENT OF ENVIRONMENTAL
CONSERVATION OF THE STATE OF NEW YORK et al.,
Respondents-Appellants.

Third Department, November 23, 2005

## APPEARANCES OF COUNSEL

*Lipman & Biltekoff, L.L.P.,* Williamsville (*Allan R. Lipman* of counsel), for appellants-respondents.

*Eliot Spitzer, Attorney General,* Albany (*Lisa M. Burianek* of counsel), for Department of Environmental Conservation of the State of New York, respondent-appellant.

*Nixon Peabody,* Rochester (*David H. Tennant* of counsel), for Fortuna Energy, Inc., respondent-appellant.

*LeBoeuf, Lamb, Greene, MacRae,* Albany (*Thomas S. West* of counsel), for Columbia Natural Resources, Inc., respondent-appellant.

## OPINION OF THE COURT

CARPINELLO, J.

At issue in this CPLR article 78 proceeding is petitioners' challenge to a determination by respondent Department of Environmental Conservation (hereinafter DEC) interpreting its powers under ECL 23-0901 to regulate the drilling of wells for natural gas. Specifically, petitioners allege that this determination was affected by errors of law and was arbitrary and capricious (*see* CPLR 7803 [3]). Supreme Court granted some of the relief sought by petitioners in that it invalidated a portion of DEC's determination, thus prompting cross appeals by the parties.

Full appreciation of the legal issues here presented requires a brief recitation of the development of the law of oil and gas. Historically, ownership of such resources was governed by the common-law principle of "law of capture," which held that the first person to reduce subsurface oil or gas to physical possession became the owner of same regardless of whether the prod-

uct was in fact extracted from beneath the surface of that person's property (see Wagner v Mallory, 169 NY 501, 505 [1902]; Matter of Envirogas, Inc. v Chu, 114 AD2d 38, 42 [1986], affd 69 NY2d 632 [1986]). Thus, the only way to protect one's interest in the minerals beneath his or her land was to drill a well. This resulted in the drilling of excessive wells, which, in turn, created considerable waste.

To maximize production, many producing states adopted legislation governing the spacing of wells. Several state legislatures based these laws on the model statute drafted by the Interstate Oil and Gas Compact Commission. Pursuant to Laws of 1963 (ch 959), New York adopted its own modified version of the model statute and delegated its implementation to DEC's predecessor. The most recent version of that statute is ECL article 23.

New York's statutory and regulatory scheme limits the number of wells that can be drilled into an underground pool of oil or gas by creating "spacing units" thus insuring maximum recovery (see ECL 23-0501; 6 NYCRR 553.1). A necessary consequence of limiting the number of wells is that some people will be prevented from drilling to recover the oil or gas beneath their property. To avoid any inequity, New York has modified the "law of capture" and adopted the doctrine of "correlative rights," whereby each landowner is entitled to be compensated for the production of the oil or gas located in the pool beneath his or her property regardless of the location of the well that effects its removal (see ECL 23-0301; 6 NYCRR 550.3 [ao]; see also Envirogas, Inc. v Consolidated Gas Supply Corp., 98 AD2d 119, 122 [1983]). Landowners with correlative rights have several options when it comes to realizing such rights. They can lease their rights to a third party, apply to DEC for a permit to drill a well, join together with other owners to jointly drill a well or do nothing. An owner that decides to do nothing is referred to as a nonconsenting owner.

If a spacing unit contains multiple tracts of land and the proposed driller does not control all of the mineral rights within that unit, there must be an integration of all of the interests at issue (see ECL 23-0901). It is of course permissible for parties to agree to terms on their own, which would be referred to as a voluntary agreement (see ECL 23-0701). However, where a portion of the mineral interests at issue are owned by a nonconsenting owner or a lessee other than the driller, it becomes incumbent upon DEC to issue a compulsory integration order

containing such terms and conditions as DEC deems "just and reasonable" (ECL 23-0901 [3]).

In addition to any just and reasonable terms, the law requires that the nonconsenting owner and nondriller lessees repay the well driller twice the pro rata costs incurred in drilling and operating the well (*see* ECL 23-0901 [3]).[1] The underlying policy for this is clear. It would be unfair for a nonconsenting owner or nondriller lessee to be relieved of the costs and risks associated with drilling a producing well, but at the same time reap the benefits of another's efforts in extracting oil or gas from beneath his or her land.[2] During the period of time that the well driller is recovering these costs, the nonconsenting owner and nondriller lessees are paid a royalty of one eighth of the production attributable to his or her property (*see* ECL 23-0901 [3]). The statute, however, makes no specific reference to the amount of royalty to be paid to nonconsenting owners *after* the well driller has been compensated for these expenses and the penalty has been paid. Herein lies the origin of much of the instant dispute.

Recently, large pools of natural gas have been discovered in the Finger Lakes Region, especially within a rock formation called "Trenton-Black River." Petitioners are all nonconsenting owners or lessees of nonconsenting owners in this region. Petitioner Western Land Services, Inc. sought a declaratory ruling from DEC regarding various issues, namely, whether a nonconsenting owner in a spacing unit is entitled to receive the full amount of the proportionate share of the spacing unit production attributable to his or her acreage after the well driller has recovered its statutory expenses (referred to as an "8/8ths" share); whether DEC could eliminate the 100% cost penalty upon the nonconsenting owner where that nonconsenting owner was never offered the opportunity to participate in the costs of drilling the well; and whether DEC can compel a well driller to transport and market the gas of the nonconsenting owners.

In January 2004, DEC issued Declaratory Ruling No. 23-14 answering the issues posed by Western Land Services. DEC concluded that the statute had left it to DEC's discretion to

---

**1.** The statute's requirement that nonconsenting owners and nondriller lessees reimburse well drillers for twice the pro rata share of drilling and operating costs is referred to as the "100% cost penalty."

**2.** The well drillers argue that the 100% cost penalty, limited as it is to drilling and operating costs only, does not begin to reimburse well drillers for the extensive leasing and seismic costs incurred prior to drilling producing wells or for the numerous dry wells that outnumber producing wells by approximately three to one.

decide how much a nonconsenting owner is entitled to be paid after the well driller has recouped its costs and the statutory penalty. In addition, DEC concluded that it could not eliminate the penalty where the well driller did not offer a nonconsenting owner the opportunity to participate in the cost of the well. DEC also declared that it could not compel the well driller to transport and market the gas of a nonconsenting owner. Finally, DEC indicated that its conclusions would only apply prospectively.

In May 2004, petitioners commenced the instant CPLR article 78 proceeding to annul DEC's determination. Supreme Court held that it is not within DEC's discretion to determine what happens to a nonconsenting owner's royalty share when the well driller has fully recouped both the out-of-pocket costs incurred and the statutory penalty. Significantly, Supreme Court ordered that the nonconsenting owners (or their lessees) be paid a full "8/8ths" royalty share. The court further held that DEC correctly declared that it has no statutory authority to eliminate the penalty or to compel the well driller to transport and market the gas of the nonconsenting owners. Finally, Supreme Court concurred with DEC's declaration that its conclusions would only apply prospectively.

Following this decision, respondents Fortuna Energy, Inc. and Columbia Natural Resources, Inc., and another entity, successfully moved to intervene in the proceeding. Fortuna and Columbia are well drillers which claim to have expended in excess of $600 million in developing and drilling gas wells in New York, including the exceedingly deep wells which are required to access gas in the Trenton-Black River formation. Thereafter, certain parties moved to reargue and renew, which relief was denied by Supreme Court.

Subsequent to oral argument of this appeal, the Legislature passed, and the Governor signed, Laws of 2005 (ch 386), which enacted substantial changes to ECL 23-0901 directly addressing the issues raised in this proceeding. However, since the act expressly applies only to those gas wells permitted after its effective date, this proceeding is not entirely moot. To the extent that Supreme Court invalidated a portion of DEC's ruling, we now reverse the judgment in this regard.

Simply stated, Supreme Court, in its interpretation of the Environmental Conservation Law, has inserted a provision in the statute which the Legislature did not place there. Such an interpretation violates the rule succinctly stated by the Court of

Appeals in *Matter of Chemical Specialties Mfrs. Assn. v Jorling* (85 NY2d 382, 394 [1995]):

> " '[N]ew language cannot be imported into a statute to give it a meaning not otherwise found therein' (McKinney's Cons Laws of NY, Book 1, Statutes § 94, at 190). Moreover, 'a court cannot amend a statute by inserting words that are not there, nor will a court read into a statute a provision which the Legislature did not see fit to enact' (*id.*, § 363, at 525). Also, an 'inference must be drawn that what is omitted or not included was intended to be omitted and excluded' (*id.*, § 240, at 412)."

In addition, Supreme Court has nullified the statutory directive that DEC make an order integrating such interests "upon terms and conditions that are just and reasonable" (ECL 23-0901 [3]). Merely because the statute makes an explicit provision for the payment of a one-eighth royalty during the penalty period, it does not mean that the royalty must thereafter rise to a full "8/8ths" share of production after the costs of drilling and penalties are paid. Under circumstances such as these, the role of courts is to discern legislative intent based first on the words of the statute under consideration (*see Matter of Albano v Kirby*, 36 NY2d 526, 529-530 [1975]). Since the statute at issue specifically delegates to DEC the obligation to implement integration orders upon terms that are "just and reasonable," we find no fault with DEC's determination that such payments to nonconsenting owners and lessees be set based upon field specific factors after appropriate administrative proceedings. In other words, DEC's role in determining what is "just and reasonable" is the overarching requirement of the statute.

By similar reasoning, we agree with the remainder of Supreme Court's decision that absent specific statutory directives, DEC has no authority to waive the cost penalty nor to require well drillers to market the gas of nonconsenting owners or nondriller lessees. Rather, DEC shall, as part of a compulsory integration order, establish "just and reasonable" terms to compensate those nonconsenting owners who are incapable of receiving their portion of the gas in kind at the well head.

In light of our determination, the issue of whether Supreme Court erred in denying motions to reargue and renew is academic.

CARDONA, P.J., SPAIN and KANE, JJ., concur.

Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as invalidated a portion of Declaratory Ruling No. 23-14 and awarded nonconsenting owners a full "8/8ths" royalty share after the penalty period and, as so modified, affirmed.

Ordered that the appeal from the order is dismissed, as academic, without costs.