■ In the Matter of TALISMAN ENERGY USA, INC., Appellant, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents. [979 NYS2d 167]—

Rose, J.P.

Petitioner is a driller and developer of natural gas wells in New York, including four wells that are the subject of this proceeding/action. Respondents Western Land Services, Inc., Buck Mountain Associates, Inc., Austin Exploration Corporation, LLC, Bryon J. Cook, William F. Cook and Epsilon Energy USA, Inc. (hereinafter collectively referred to as respondents) are the partial owners or manage the partial owners of the natural gas extracted by petitioner. At issue here is whether the Legislature's substantial amendments made in 2005 to ECL article 23, which governs oil and natural gas exploration,

development and production in New York, apply to the wells in question.

A more comprehensive history of the development of the law regarding the production of oil and gas in New York may be found in our prior holding in *Matter of Western Land Servs., Inc. v Department of Envtl. Conservation of State of N.Y.* (26 AD3d 15 [2005], *lv denied* 6 NY3d 713 [2006]). To briefly summarize, prior to 2005, respondent Department of Environmental Conservation (hereinafter DEC) issued spacing orders determining which owners had the right to be compensated by the well operator for the extraction of natural gas from an underground pool (*see* ECL former 23-0501). DEC would then join the interests of the various owners of the pool and issue integration orders that defined the rights and obligations of the parties in terms that it deemed "just and reasonable" (ECL 23-0901 former [3]). This resulted in conflicts between well operators and the various owners regarding the question of reasonable compensation and the degree of involvement of the owners in the risks and rewards involved in drilling a well (*see* Senate Introducer Mem in Support, Bill Jacket, L 2005, ch 386 at 5).

To address these conflicts, the Legislature amended ECL article 23 in 2005, enacting changes to well permitting, spacing and the integration process (*see* L 2005, ch 386). As relevant here, DEC no longer determines the rights and obligations of the owners (*see* ECL 23-0901 [3]). Rather, the owners may choose between three levels of ownership with varying rights and obligations consistent with their desired level of participation in the exploration and drilling of the well (*see* ECL 23-0901 [3]).

The amendments took effect on August 2, 2005 and apply "to any oil or gas well permit *or* spacing order issued on or after such effective date" (L 2005, ch 386, § 10 [emphasis added]). Here, the four wells in question were transition wells, in that petitioner obtained the permits for these wells prior to the effective date of the 2005 amendments, but the spacing orders had not been issued as of that date. Petitioner challenged the applicability of the 2005 amendments to such wells. Respondent Commissioner of Environmental Conservation then issued an interim decision finding, among other things, that the 2005 amendments applied to the integration proceedings involving the four transition wells at issue here. Petitioner disagreed and, after DEC issued its final integration orders allowing respondents to choose their level of ownership pursuant to ECL 23-0901 (3), petitioner commenced this combined CPLR article 78 proceeding and declaratory judgment action. Following

joinder of issue, Supreme Court dismissed the combined proceeding and action, prompting this appeal.

We affirm. Initially, we must reject petitioner's contention that applying the 2005 law to transition wells constitutes a retroactive application of the law. The statute governs well permits or spacing orders issued on or after its effective date (*see* L 2005, ch 386, § 10). The statute therefore contemplates the existence of transition wells such as the four in question here. Inasmuch as "[a] statute is not retroactive . . . when made to apply to future transactions, merely because such transactions relate to and are founded upon antecedent events" (McKinney's Cons Laws of NY, Book 1, Statutes § 51, Comment at 87; *see Matter of Raynor v Landmark Chrysler*, 18 NY3d 48, 57 [2011]), the fact that the new law governs the integration of a well that had already been permitted but not spaced does not render it retroactive.

We also reject petitioner's contention that the Commissioner's decision conflicts with this Court's prior decision in *Matter of Western Land Servs., Inc. v Department of Envtl. Conservation of State of N.Y. (supra)*. In that case, we stated that the 2005 legislation "expressly applies only to those gas wells permitted after its effective date" (*id*. at 19). This statement, however, was made in the context of interpreting the pre-2005 law, and the 2005 legislation was cited only in response to a claim that it had rendered the appeal moot (*id*.). Accordingly, *Matter of Western Land Servs.* does not establish precedent as to the issue now before us (*see Robinson Motor Xpress, Inc. v HSBC Bank, USA*, 37 AD3d 117, 123-124 [2006]).

Turning to the applicability of the 2005 amendments to transition wells, "[t]he primary consideration of courts in interpreting a statute is to ascertain and give effect to the intention of the Legislature" (*Riley v County of Broome*, 95 NY2d 455, 463 [2000] [internal quotation marks and citation omitted]), and "[s]uch intent and meaning is best determined from the plain language of the statutory text" (*Matter of Doe v City of Schenectady*, 84 AD3d 1455, 1458 [2011]). Further, "[a]lthough the words of a statute control if unambiguous, consideration may also be given to corresponding legislative history" (*State of New York v Getty Petroleum Corp.*, 89 AD3d 262, 265 [2011]; *see Riley v County of Broome*, 95 NY2d at 463). Giving the language of the enactment provision its plain meaning (*see* L 2005, ch 386, § 10), we conclude that the amendments apply to the spacing orders for the wells in question here.

Petitioner argues that, even if the amended law applies to the spacing orders, it does not apply to integration orders for transi-

tion wells. We are, however, unpersuaded. "In construing a statute, a court must attempt to harmonize all its provisions and to give meaning to all its parts, considered as a whole, in accord with legislative intent" (*Matter of Kittredge v Planning Bd. of Town of Liberty*, 57 AD3d 1336, 1339 [2008] [citations omitted]; *see Matter of Guidarelli v Brassard*, 88 AD3d 1147, 1148 [2011]; *Matter of Lewis Family Farm, Inc. v New York State Adirondack Park Agency*, 64 AD3d 1009, 1013-1014 [2009]). Pursuant to ECL article 23, DEC is directed to undertake the integration process when the interests of the various owners of the mineral rights within a spacing unit must be integrated to carry out the policy goals of the statute (*see* ECL 23-0901 [2], [3]). Therefore, integration cannot occur until a spacing unit has been established identifying the interested parties. Under petitioner's argument, the spacing unit for transition wells would be established pursuant to the amended law, but the subsequent integration would be dictated by the former law. Inasmuch as the 2005 amendments were intended "to eliminate uncertainty in the unitization and integration process[es]" by "[a]dd[ing] a new, streamlined statutory procedure for the integration of interests in a [spacing] unit" (Senate Introducer Mem in Support, Bill Jacket, L 2005, ch 386 at 4-5), we cannot agree with petitioner that the Legislature intended such an unharmonious statutory scheme where the former law, which resulted in the uncertainty in the integration process that the amendments were intended to eliminate, would still be applicable to integration orders issued after the new law's enactment.

Nor do we agree with petitioner that the integration orders issued by DEC were contrary to the intent of the amended law. As reflected in the orders, respondents chose to be integrated participating owners (*see* ECL 23-0901 [3] [a] [2]). It is anticipated that such owners agree to participate in the well and to pay all associated costs prior to the well being dug (*see* ECL 23-0901 [3] [a] [2]). Here, the wells were already productive prior to respondents' election of their ownership status and they were allowed to become integrated participating owners without having to assume the financial risks of well exploration and development normally associated with that status of ownership. While we agree with petitioner that this frustrates the purpose of the new legislation to some degree, the statute reflects that the Legislature contemplated the existence of transition wells at the time of the amendments (*see* ECL 23-0503 [5]; L 2005, ch 386, § 10), and not including different terms for the integration of transition wells is an indication that the omission was intended (*see Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce*, 21 NY3d

55, 60 [2013]; *Matter of Community Related Servs., Inc. v Carpenter-Palumbo*, 84 AD3d 1450, 1452 [2011], *lv denied* 17 NY3d 717 [2011]). In our view, the omission was a determination by the Legislature that, in the limited situations involving transition wells in existence at the time of the amendments, the interest in eliminating uncertainty in the integration of interests outweighs the disadvantages to well operators presented by owners who make ownership status choices with knowledge concerning the productivity of the well.

Having failed to establish that the 2005 amendments are inapplicable to the spacing and integration of transition wells, petitioner's combined proceeding and action was properly dismissed. Petitioner's remaining arguments have been considered and found to be lacking in merit.

Lahtinen, McCarthy and Garry, JJ., concur. Ordered that the judgment is affirmed, without costs.