■ In the Matter of BOARD OF COOPERATIVE EDUCATIONAL SERVICES OF ALBANY-SCHOHARIE-SCHENECTADY-SARATOGA COUNTIES, Petitioner, v TOWN OF COLONIE, Respondent. [702 NYS2d 219] —Mugglin, J. Proceeding initiated in this Court pursuant to EDPL 207 to review a determination of respondent which condemned a portion of petitioner's exclusive easement as a public highway.

Petitioner maintains an educational facility on a 13-acre parcel north of Watervliet-Shaker Road in the Town of Colonie, Albany County. One means of ingress and egress to petitioner's campus is an access road running northerly approximately 580 feet from Watervliet-Shaker Road. Petitioner owns an exclusive easement across this strip of land.

In October 1992 respondent's Planning Board approved a site plan proposal for an office building project adjacent to and running the entire length of petitioner's access road. As part of the office plan proposal, the developer proposed to create a curb-cut from the office building's parking lot to petitioner's access road. As a result, the Planning Board made this proposed curb-cut part of its final site plan approval. Construction of the office building was approved, and upon completion, the Planning Board granted final site plan approval on May 27, 1997 although the developer had not been successful in getting petitioner's cooperation in allowing use of the access road.

In 1997, the Department of Transportation began a highway improvement project in the immediate vicinity of the access road. The project was based on traffic studies performed in 1992 in conjunction with the proposed expansion of Albany International Airport. Although the report (Airport Area Generic Environmental Impact Statement) was prepared in 1991, it predicted that future development along the Watervliet-Shaker Road corridor would result in traffic which would exceed the design capacities of the roadways in the area. The predictions contained in this report and the expansion of the airport precipitated the highway improvement project of 1997 in the area of petitioner's campus.

In order to obtain a curbcut and use of petitioner's access road, respondent commenced a condemnation proceeding in Supreme Court in November 1998. This proceeding was dismissed in March 1999, Supreme Court finding that respondent failed to establish that the proposed taking was de minimis in nature and, therefore, was not exempt from the public hearing requirements of EDPL article 2. On April 15, 1999 respondent held a public hearing, following which respondent made its determination and findings concerning the proposed taking and authorized the acquisition by condemnation of petitioner's access road. Petitioner subsequently commenced this proceeding contending that in reaching its determination, respondent failed to properly comply with the requirements of the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]), that the proposed taking did not serve a dominant public purpose and that the taking was prohibited by the "prior public use" doctrine (*see, County of Delaware v Walton Water Co.*, 9 AD2d 16).

With respect to SEQRA, petitioner maintains that respondent issued its negative determination without addressing petitioner's concerns that the increased use of its access road would create traffic problems and increase the threat of harm to petitioner's students. Although respondent concedes that the proposed taking will have some impact on the environment, it insists that it acted properly with respect to SEQRA because the impact identified by petitioner is neither significantly adverse nor substantial.

As part of judicial review of an eminent domain proceeding involving a SEQRA determination, courts are required to determine whether "the condemnor's determination and findings were made in accordance with procedures set forth in [EDPL article 2] and with [ECL] article eight" (EDPL 207 [C] [3]; *see, Matter of East 13th St. Community Assn. v New York*

*State Urban Dev. Corp.*, 84 NY2d 287, 296-297). As a general proposition, SEQRA requires the preparation of an environmental impact statement (hereinafter EIS) (*see,* ECL 9-0109). In an unlisted action such as the one at issue here (*see,* 6 NYCRR 617.4, 617.5), the requirement of an EIS may be avoided if the lead agency determines that the action will have no adverse environmental impacts or that the identified adverse environmental impacts will not be significant (*see,* 6 NYCRR 617.7 [a] [2]). In order to render this negative determination that an EIS is not necessary, the lead agency must engage in an analysis of specific mandated criteria (*see,* 6 NYCRR 617.7 [c]) and set forth its determination in a written statement containing reasoned elaboration and reference to any supporting documentation (*see,* 6 NYCRR 617.7 [b] [4]). In short, the condemnor must "identif[y] the relevant areas of environmental concern, [take] a 'hard look' at them, and [make] a 'reasoned elaboration' of the basis for [its] determination" (*Chinese Staff & Workers Assn. v City of New York*, 68 NY2d 359, 363-364, quoting *Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 417; *see, Matter of Hubbard v Town of Sand Lake*, 211 AD2d 1005, 1006).

In its negative determination, respondent failed to identify or address petitioner's concerns even though those concerns arguably involve factors of significant environmental impact, instead baldly asserting that "the general effect of the proposed project on the environment * * * is minimal * * * [and] will not result in any significant adverse environmental impacts". Since the proposed taking will have some impact on the environment (*see, e.g.,* 6 NYCRR 617.7 [c] [1] [v], [viii]), respondent's failure to identify relevant concerns and elaborate on the reasons for its conclusions that those concerns were not significant requires rejection of the determination and findings (*see, Matter of Niagara Mohawk Power Corp. v Green Is. Power Auth.*, 265 AD2d 711, 712; *Matter of Hubbard v Town of Sand Lake, supra,* at 1006; *Matter of Segal v Town of Thompson*, 182 AD2d 1043, 1045-1046; *compare, Matter of Citizens Accord v Town Bd.*, 192 AD2d 985, 988, *lv denied* 82 NY2d 656).

Respondent's present contention that it took a hard look at petitioner's concerns is belied by the fact that neither the concerns nor the suggestions to overcome those concerns were incorporated in the negative determination as required by 6 NYCRR 617.7 (b) (4). "[L]iteral compliance with both the letter and spirit of SEQRA is required and substantial compliance will not suffice" (*Inland Vale Farm Co. v Stergianopoulos*, 104 AD2d 395, 396, *affd* 65 NY2d 718; *accord, Matter of Group For*

*The S. Fork v Wines*, 190 AD2d 794, 795; *Matter of Holmes. v Brookhaven Town Planning Bd.*, 137 AD2d 601, 603, *lv denied* 72 NY2d 807).

We next address petitioner's assertion that no public purpose was established by respondent and that the taking will solely benefit a private party. A proper exercise of eminent domain power requires, *inter alia*, that "a public use, benefit or purpose will be served by the proposed acquisition" (EDPL 207 [C] [4]).

Upon judicial review, "[i]f an adequate basis for a determination [that a public purpose was served] is shown 'and the objector cannot show that the determination was "without foundation", the agency's determination should be confirmed'" (*Matter of Waldo's, Inc. v Village of Johnson City*, 74 NY2d 718, 720, quoting *Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 425, *supra*). Here, respondent specifically found that "the public benefit derived from the acquisition is improved access to existing public roads and the protection and promotion of traffic safety". This determination was amply supported by comments made by the chair of respondent's Highway Safety Committee as well as employees of businesses located in the office complex, all of whom expressed concern over the necessity of having to cross as many as three lanes of traffic in order to make a left turn onto Watervliet-Shaker Road while simultaneously negotiating the uncontrolled access of customers of a convenience store and bank across the street. Inasmuch as traffic and public safety is a legitimate area of public concern, the determination was properly made.

In addition, the fact that the privately owned office complex might benefit from the taking is irrelevant, provided "the public purpose is dominant" (*Matter of Waldo's, Inc. v Village of Johnson City, supra*, at 721). Here, given the number of employees and patrons who must safely exit the office complex, coupled with the safety of the persons traveling on Watervliet-Shaker Road, the benefit to the owner of the complex is merely incidental (*see, Matter of Northeast Parent & Child Socy. v City of Schenectady Indus. Dev. Agency*, 114 AD2d 741, 742; *Matter of Terrace W. v City of Plattsburgh*, 73 AD2d 763, *appeal dismissed* 49 NY2d 916).

Finally, we determine that there is no merit to petitioner's assertion that the prior public use doctrine bars respondent from exercising its power of eminent domain to condemn the access road. This doctrine provides that "where lands have once been taken or acquired for public use, they cannot be taken for another public use, at least if such other public use would interfere with or destroy the public use first acquired,

unless the intention of the Legislature that such lands should be so taken is shown by express terms or necessary implication" (*New York Cent. & Hudson Riv. R. R. Co. v City of Buffalo*, 200 NY 113, 117-118; *see, County of Delaware v Walton Water Co.*, 9 AD2d 16, *supra*). Obviously, using this access road as a public road does not destroy its prior public use and, if properly designed and planned, the additional vehicular traffic from the premises at 1021 and 1031 Watervliet-Shaker Road will not interfere with the vehicular traffic from petitioner's campus.

Mercure, J. P., Peters, Spain and Graffeo, JJ., concur. Adjudged that the determination is annulled, with costs, and petition granted.