■ In the Matter of JOAN KITTREDGE et al., Appellants, v PLANNING BOARD OF TOWN OF LIBERTY et al., Respondents. [870 NYS2d 582]—

Stein, J.

In May 2006, respondent CR Menderis, LLC (hereinafter Menderis) submitted to respondent Planning Board of the Town of Liberty (hereinafter the Board) an application for approval to subdivide a 143.2-acre plat into 27 lots for single-family homes. The application was placed on the Board's next meeting agenda, after which the preliminary plat was referred to the Board's consultants. Following a review of the preliminary plat, the Board requested certain changes. Menderis thereafter amended the preliminary plat to incorporate the suggestions made by the Board's consultants, completed a full environmental assessment form and submitted substantial documentation in connection therewith. The Board declared itself lead agency for purposes of the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]) and a public hearing was held in August and September 2006 regarding the proposed development. At the public hearing and during the written comment period, which extended beyond the close of the hearing, numerous surrounding landowners and interested citizens voiced their concerns regarding the proposed development and its impact on the surrounding area. After the public hearing, the Board

required Menderis to conduct studies to address the environmental concerns that had been raised. The results of those studies were provided to the Board in November 2006 and were thereafter reviewed by the Board's engineer and consultants and discussed at subsequent Board meetings. The Board issued a negative declaration of environmental significance on February 6, 2007 and granted preliminary subdivision approval to Menderis on March 27, 2007.

Petitioners commenced this CPLR article 78 proceeding to annul the Board's negative declaration as being in violation of SEQRA and to annul the Board's preliminary subdivision approval as being in violation of Town Law § 276 (5) (d) (i) (1) and Liberty Town Code § 130-13 (D) (3) (a) (1). Supreme Court upheld the Board's determinations and dismissed the petition. Petitioners now appeal and we reverse.

Initially, we agree with petitioners' contention that the Board failed to take the requisite hard look at certain aspects of the potential environmental impact of this project. As lead agency, the Board was obligated to "identif[y] the relevant areas of environmental concern, [take] a hard look at them, and [make] a reasoned elaboration of the basis for its determination" (*Matter of Save the Pine Bush, Inc. v Common Council of City of Albany*, 56 AD3d 32, 41 [2008] [internal quotation marks and citations omitted]; *see Matter of Eadie v Town Bd. of Town of N. Greenbush*, 47 AD3d 1021, 1024-1025 [2008]). Here, petitioners argue that the Board, in reviewing the proposed action, failed to take the requisite hard look at three areas of environmental impact, namely wildlife, wetlands and storm water pollution.

We recognize that the Board solicited public input, as well as a range of scientific studies and other information, to assist it in assessing the environmental impact of the proposed development. The record reflects that the Board extensively considered the public comments, as well as the studies performed at the behest of both petitioners and respondents, and that its conclusion that no wetlands were located on or immediately adjacent to the project site was amply supported. As to the storm water impact, we similarly find that the Board fulfilled its obligations by consulting with its own engineers and the engineers employed by Menderis regarding the Storm Water Pollution Prevention Plan. Accordingly, Supreme Court properly determined that the Board took the requisite hard look at the impact on wetlands and storm water pollution.

However, we agree with petitioners' contention that the Board failed to take the requisite hard look at the effect of the proposed development on wildlife. In fact, there is no record evidence of

any meaningful investigation into this area of environmental concern. In particular, the conclusion that there were no endangered or threatened species on the property was based on two letters from the Department of Environmental Conservation (hereinafter DEC). While the first letter—from DEC's Natural Heritage Program—indicated that the program's databases contained no record of endangered species in the area, it specifically cautioned that the absence of such records did not mean that any such species did not exist there, but only that studies of the area had not been performed. The letter further indicated that the information should not be substituted for on-site surveys. The second letter—received from DEC's Bureau of Wildlife a mere two weeks later—similarly indicated that the Bureau had "no records of known occurrences of threatened or endangered wildlife species on or in the immediate vicinity." In concluding that no nonthreatened or nonendangered species would be affected by the proposed development, the Board apparently relied on a report concerning the age of the forest on the property and the fact that the majority of the land was abandoned agricultural land that was in the process of reverting back to woodland. There is no explanation of how those factors led to the conclusion that there would be no impact on wildlife. Nor is there any record evidence that the Board "conducted an investigation and reasonably exercised its discretion so as to make a reasoned elaboration as to the effect of [the development] on [wildlife]" (*Akpan v Koch*, 75 NY2d 561, 571 [1990]), despite concerns raised by the public.

Although the Board was free to determine which environmental factors merited the deepest consideration (*see Matter of WEOK Broadcasting Corp. v Planning Bd. of Town of Lloyd*, 79 NY2d 373, 380-381 [1992]; *Akpan v Koch*, 75 NY2d at 570), its failure to properly identify the impact of the proposed development on wildlife or to take the requisite hard look at such impact is contrary to the mandates of SEQRA (*see Matter of City Council of City of Watervliet v Town Bd. of Town of Colonie*, 3 NY3d 508, 515 [2004]; *Akpan v Koch*, 75 NY2d at 571). Thus, we find that the Board's SEQRA determination that there would be no significant impact on wildlife was arbitrary and capricious and must be vacated (*see* CPLR 7803 [3]; *Matter of Save the Pine Bush, Inc. v Common Council of City of Albany*, 56 AD3d at 42-43).

We also agree with petitioners' contention that the Board improperly failed to hold a public hearing regarding the proposed subdivision after it issued its negative declaration. The required timing of a public hearing is set forth in Town

Law § 276 (5) (d) (i) (1) and itsanalogous provision in Liberty Town Code § 130-13 (D) (3) (a) (1). Town Law § 276 (5) (d) (i) provides, as pertinent here, as follows:

"The time within which the planning board shall hold a public hearing on the preliminary plat shall be coordinated with any hearings the planning board may schedule pursuant to [SEQRA], as follows:

"(1) If such board determines that the preparation of an environmental impact statement on the preliminary plat is not required, the public hearing on such plat shall be held within sixty-two days after the receipt of a complete preliminary plat by the clerk of the planning board."

At issue here is whether the statute requires that the public hearing be held after the receipt of a complete preliminary plat[1] or—as respondents argue and Supreme Court found—whether it merely establishes a deadline that permits the holding of a public hearing at any time prior to 62 days after such receipt, including a time that precedes receipt thereof. While it is possible to read Town Law § 276 (5) (d) (i) (1), standing alone, as Supreme Court did, we find that, when read in conjunction with the other provisions of Town Law § 276 and the applicable SEQRA provisions, the correct interpretation requires that a public hearing be held within 62 days *after* a complete preliminary plat is received by the clerk of the planning board.

In construing a statute, a court must attempt to harmonize all its provisions and to give meaning to all its parts, considered as a whole, in accord with legislative intent (*see* McKinney's Cons Laws of NY, Book 1, Statutes §§ 91, 98; *People v Finley*, 10 NY3d 647, 655 [2008]; *Friedman v Connecticut Gen. Life Ins. Co.*, 9 NY3d 105, 115 [2007]; *Matter of Sweeney v Dennison*, 52 AD3d 882, 883 [2008]). Such intent and meaning is best determined from the plain language of the statutory text (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 94; *Samiento v World Yacht Inc.*, 10 NY3d 70, 77-78 [2008]; *Matter of Sweeney v Dennison*, 52 AD3d at 883).

Town Law § 276 establishes a procedural structure for the review of subdivision plats, including provisions for coordination with other agencies by setting time limits in conjunction with SEQRA procedures (*see* Rice, Practice Commentaries, McKinney's Cons Laws of NY, Book 61, Town Law § 276, at 66-68).

---

1. Where, as here, the lead agency does not require an environmental impact statement, a preliminary plat is deemed complete when the lead agency files its negative declaration (*see* Town Law § 276 [5] [c]; 6 NYCRR 617.3 [c] [1]; *Matter of Benison Corp. v Davis*, 51 AD3d 1197, 1197-1198 [2008]).

In circumstances where no draft environmental impact statement (hereinafter EIS) is required, Town Law § 276 (5) (c) provides that "[t]he time periods for review of a preliminary plat shall begin upon filing of [a] negative declaration." Common sense dictates that a hearing not be held on the preliminary plat until the plat is deemed complete, which occurs when a negative declaration is filed (*see* Town Law § 276 [5] [c]). Notably, where, unlike here, a planning board has determined that an EIS is required, any public hearing on the draft EIS must be held jointly with the required public hearing on the preliminary plat (*see* Town Law § 276 [5] [d] [i] [2]), and the notice period for the public hearing on the preliminary plat depends upon whether a hearing will also be held on an EIS (*see* Town Law § 276 [5] [d] [ii])—all of which necessarily implies that the planning board must make an initial SEQRA determination before the public hearing is held.[2]

This reasoning is buttressed by a reading of SEQRA statutes and regulations, which indicate that public hearings—although not prohibited—are not contemplated in the initial review phase (*see* ECL 8-0109 [5]; 6 NYCRR 617.6, 617.7). In fact, public comments and hearings are not provided for in SEQRA until after the filing of a draft EIS (*see* ECL 8-0109 [5]), "[w]hen the lead agency has . . . determined that a draft EIS . . . is adequate for public review" (6 NYCRR 617.9 [a] [3], [4]). We also note that the focus of a public hearing pursuant to SEQRA is different from the focus of a public hearing for purposes of subdivision approval, generally. The former is intended to address solely environmental concerns (*see generally* ECL 8-0101), while the latter "is intended to ensure that individual lots . . . are properly and safely laid out and sufficiently improved with necessary facilities and amenities" (Rice, Practice Commentaries, McKinney's Cons Laws of NY, Book 61, Town Law § 276, at 58).

In sum, reading the statute as a whole, we conclude that Town

---

2. Likewise, the deadline for a planning board's decision whether to approve a preliminary plat depends upon the results of the board's initial review as lead agency under SEQRA (*see* Town Law § 276 [5] [d] [iii] [1]). Where, as here, a planning board determines that the preparation of an EIS is not necessary, the board must render a decision within 62 days after the close of the public hearing (*see* Town Law § 276 [5] [d] [iii] [1]). Here, the negative declaration was not issued until more than 62 days after the conclusion of the public hearing, making it impossible for the Board to comply with Town Law § 276 (5) (d) (iii) (1). Under these circumstances, the statutes cannot be reconciled applying the interpretation urged by respondents (*see generally* Municipal Home Rule Law § 10 [1] [ii]; *Turnpike Woods v Town of Stony Point*, 70 NY2d 735, 737 [1987]).

Law § 276 (5) (d) (i) (1) and Liberty Town Code § 130-13 (D) (3) (a) (1) require that a public hearing be held after a lead agency has completed its initial review pursuant to SEQRA. Since the Board here failed to hold the requisite hearing, its approval of Menderis's preliminary subdivision plat was contrary to law and must be vacated (*see* CPLR 7803).

Mercure, J.P., Spain, Rose and Kane, JJ., concur. Ordered that the judgment is reversed, on the law, without costs, determinations of respondent Planning Board of the Town of Liberty annulled, and petition granted.