Stein, J.
Cross appeals from a judgment of the Supreme Court (Cerio Jr., J.), entered August 16, 2012 in Madison County, which partially granted petitioners’ application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to, among other things, annul a determination of respondent Town of Richfield Planning Board granting a request by respondent Monticello Hills Wind, LLC for a special use permit.
In March 2011, respondent Monticello Hills Wind, LLC (hereinafter the applicant) applied to respondent Town of Richfield Planning Board for a special use permit in connection with a project involving the proposed construction of six wind turbines and associated facilities (hereinafter the project) on 1,190 acres of land located in the Town of Richfield, Otsego County. The Board designated itself as the lead agency for purposes of the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]), retained an outside consulting firm, held a public hearing on September 12, 2011, conducted multiple meetings and considered public comments both in support of, and in opposition to, the project. At a November 22, 2011 meeting, the Board reviewed the full environmental assessment form (hereinafter EAF), issued a negative declaration of significance under SEQRA and granted the applicant a special use permit. However, the approval of the special use permit was contingent upon the applicant entering into a host community agreement with the Town, the purpose of which was to address the applicant’s ongoing obligations and responsibilities with respect to the project.
As a result of the Board’s actions, petitioners — a group of local citizens and property owners in the Town — commenced this combined CPLR article 78 proceeding and action for declaratory judgment seeking, among other things, to annul the Board’s determinations, and asserted claims that the Board failed to comply with SEQRA, the Open Meetings Law (see Public Officers Law art 7), the Town Law and the Town’s special use permit ordinance. Petitioner Lawrence J. Frigault also sought certain relief pursuant to the Freedom of Information Law (see Public Officers Law art 6 [hereinafter FOIL]).[1] Ultimately, Supreme Court rejected petitioners’ challenge to the Board’s *1349 SEQRA review, but found that the Board violated the Open Meetings Law in the manner in which it conducted the November 22, 2011 meeting and violated Town Law § 274-b with respect to the September 12, 2011 hearing. As a result of these violations, the court annulled the negative declaration and special use permit, prompting these appeals by respondents[2] and cross appeal by petitioners.
We now modify. Turning first to petitioners’ argument that the Board failed to comply with the requirements of SEQRA, we begin our analysis by noting that an environmental impact statement (hereinafter EIS) is required “ ‘on any action . . . which may have a significant effect on the environment’ ” (Matter of Bronx Comm. for Toxic Free Schs. v New York City Sch. Constr. Auth., 20 NY3d 148, 155 [2012], quoting ECL 8-0109 [2]; accord Matter of Troy Sand & Gravel Co., Inc. v Town of Nassau, 82 AD3d 1377, 1378 [2011]; see 6 NYCRR 617.9 [a] [5] [i] [b]; Matter of Kittredge v Planning Bd. of Town of Liberty, 57 AD3d 1336, 1337 [2008]). A type I action, such as the project here, “carries with it the presumption that it is likely to have a significant adverse impact on the environment” (6 NYCRR 617.4 [a] [1]; see Matter of City Council of City of Watervliet v Town Bd. of Town of Colonie, 3 NY3d 508, 518 n 8 [2004]; Matter of Troy Sand & Gravel Co., Inc. v Town of Nassau, 82 AD3d at 1378). However, when a lead agency “ ‘determínete] either that there will be no adverse environmental impacts or that the identified adverse environmental impacts will not be significant,’ ” it may issue a negative declaration and, in such instance, no EIS is required (Matter of Troy Sand & Gravel Co., Inc. v Town of Nassau, 82 AD3d at 1378, quoting 6 NYCRR 617.7 [a] [2]; accord Matter of New York City Coalition to End Lead Poisoning v Vallone, 100 NY2d 337, 347 [2003]; Matter of Gabrielli v Town of New Paltz, 93 AD3d 923, 924 [2012], lv denied 19 NY3d 805 [2012]).
“Although the threshold triggering an EIS is relatively low” (Matter of Chinese Staff & Workers’ Assn. v Burden, 19 NY3d 922, 924 [2012] [internal quotation marks and citations omitted]), judicial review of a negative declaration is limited to whether “the [lead] agency identified the relevant areas of environmental concern, took a hard look at them, and made a reasoned elaboration of the basis for its determination” (Matter of Shop-Rite Supermarkets, Inc. v Planning Bd. of the Town of Wawarsing, 82 AD3d 1384, 1385 [2011], lv denied 17 NY3d 705 *1350 [2011] [internal quotation marks and citations omitted]; see Matter of Eadie v Town Bd. of Town of N. Greenbush, 7 NY3d 306, 318 [2006]). In this regard, “[i]t is not the province of the courts to second-guess thoughtful agency decisionmaking and, accordingly, an agency decision should be annulled only if it is arbitrary, capricious or unsupported by the evidence” (Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast, 9 NY3d 219, 232 [2007]).
With those principles in mind, our review of the record persuades us that the Board’s negative declaration was issued in compliance with SEQRA. The Board engaged in a lengthy SEQRA review process, which included hiring an outside consulting firm and conducting no less than 11 Board meetings between the time the permit application was filed in March 2011 and the issuance of the negative declaration in November 2011. The full EAF was replete with studies on environmental issues, including the project’s impact on bats and birds, “shadow flicker,”[3] noise, cultural resources and visual effect, and the Board afforded members of the public an opportunity to voice their concerns with respect to the project. In addition, the Board received input as to the project’s environmental impacts from various state agencies, including the Office of Parks, Recreation and Historic Preservation, the Department of Environmental Conservation, the Department of Transportation, and the Department of Agriculture and Markets.
At the conclusion of the environmental review process, the Board issued a thorough and reasoned analysis addressing the areas of relevant environmental concern — land, water, air, plants and animals, agricultural land resources, aesthetic resources, historic and archeological resources, open space and recreation, noise and odor, among others — which, in our view, demonstrates that the Board took the requisite hard look at those concerns (see Matter of Gabrielli v Town of New Paltz, 93 AD3d at 925; Matter of West Beekmantown Neighborhood Assn., Inc. v Zoning Bd. of Appeals of Town of Beekmantown, 53 AD3d 954, 956-957 [2008]). As a result, we agree with Supreme Court that the Board fulfilled its obligations under SEQRA (see Matter of Bronx Comm, for Toxic Free Schs. v New York City Sch. Constr. Auth., 20 NY3d at 155; Matter of Rotterdam Ventures, Inc. v Town Bd. of the Town of Rotterdam, 90 AD3d 1360, 1361 [2011]; Matter of *1351 Mombaccus Excavating, Inc. v Town of Rochester, N.Y., 89 AD3d 1209, 1211 [2011], lv denied 18 NY3d 808 [2012]).[4]
However, we disagree with Supreme Court’s determination that a violation of the Open Meetings Law warranted annulment of the resolutions passed by the Board at its November 22, 2011 meeting. It is undisputed that the Board initially provided proper notice that a Board meeting was scheduled to take place at the Town Hall at 7:00 p.m. on that date and that the project would be the focus of the meeting (see Public Officers Law § 104 [1], [2]). As a result of the large public turnout at that meeting, the room in the Town Hall was filled in excess of the maximum occupancy limit and the Town Attorney announced to those in attendance that the meeting would be relocated to a community room in a church located approximately two blocks away. A note was placed on the door of the Town Hall to inform late attendees of the move, and the meeting commenced approximately one hour after it was scheduled to begin.
Supreme Court found that the Board should have anticipated the large crowd at the meeting and made appropriate arrangements to accommodate its size and that the Board violated the Open Meetings Law by relocating the meeting without proper notice. We do not agree. As relevant here, the Open Meetings Law provides that “[e]very meeting of a public body shall be open to the general public” (Public Officers Law § 103 [a]) and it is incumbent upon a public body to “make or cause to be made all reasonable efforts to ensure that meetings are held in an appropriate facility which can adequately accommodate members of the public who wish to attend such meetings” (Public Officers Law § 103 [d]). Here, when it became clear that the space in the Town Hall was not large enough for the number of people who wished to attend the meeting, the Board notified everyone present — including the media — that the meeting was being relocated, and took steps to make certain that anyone arriving late would be aware of the change. In our view, the Board’s efforts in relocating the meeting were aimed at accommodating the large crowd and ensuring public access, and were entirely reasonable under the circumstances (see Comm on Open Govt OML-AO-05210 [2011]).
*1352 Even if we were to agree with Supreme Court that the relocation of the meeting represented a technical violation of the Open Meetings Law, the resolutions issued by the Board at the meeting are “not void but, rather, voidable upon good cause shown” (Matter of Oakwood Prop. Mgt., LLC v Town of Brunswick, 103 AD3d 1067, 1069-1070 [2013], lv denied 21 NY3d 853 [2013] [internal quotation marks and citation omitted]; see Matter of Perryman v Village of Saranac Lake, 64 AD3d 830, 833 [2009]). Inasmuch as the Board clearly changed the location of the meeting not to frustrate, but to ensure, the public’s attendance at the meeting, and the Board’s actions were consistent with the purpose of the Open Meetings Law (see Public Officers Law § 100; Matter of MCI Telecom. Corp. v Public Serv. Commn. of State of N.Y., 231 AD2d 284, 291 [1997]), we conclude that petitioners have not shown good cause for us to declare void the actions taken by the Board at the November 22 meeting (see Matter of New York Univ. v Whalen, 46 NY2d 734, 735 [1978]; Matter of Imburgia v Procopio, 98 AD3d 617, 619 [2012]; Matter of Chenkin v New York City Council, 72 AD3d 548, 549 [2010], lv denied 16 NY3d 703 [2011]; Matter of Carrier v Town of Palmyra Zoning Bd. of Appeals, 30 AD3d 1036, 1038 [2006], lv denied 8 NY3d 807 [2007]; Matter of Center Sq. Assn., Inc. v City of Albany Bd. of Zoning Appeals, 19 AD3d 968, 969-970 [2005]).[5] Thus, neither the special use permit nor the negative declaration should have been annulled on the basis of any claimed violation of the Open Meetings Law.
Nonetheless, Supreme Court properly annulled the special use permit on other grounds. First, the Board was required to hold a public hearing on the permit application (see Town Law § 274-b [6]) and was required to provide the Otsego County Planning Department with at least 10 days written notice of the hearing, “accompanied by a full statement of such proposed action” (Town Law § 274-b [7]), consisting of “all materials required by and submitted to the [Board] as an application on [the] proposed action, including a completed [EAF] and all other materials required by [the Board] in order to make its determination of significance pursuant to [SEQRA]” (General Municipal Law § 239-m [1] [c]). Here, the only public hearing held by the Board in connection with the project occurred before the negative declaration was issued and prior to the Board’s referral of the project to the County Planning Department for its review (see General Municipal Law § 239-m [2], [3] [a] [iii]). *1353 The County Planning Department was not provided with written notice of the public hearing, nor have respondents demonstrated that the County Planning Department received all of the materials on which the Board relied in reaching its negative declaration (see General Municipal Law § 239-m [2], [3] [a] [iii]). In fact, the record does not reflect that the County Planning Department was provided with a full statement of the proposed action until November 2011, just days before the Board issued its resolution granting the special use permit. As a result, we agree with Supreme Court that the Board’s failure to abide by the requirements of Town Law § 274-b requires nullification of the special use permit (cf. Matter of Troy Sand & Gravel Co., Inc. v Town of Nassau, 82 AD3d at 1379; Matter of Cipperley v Town of E. Greenbush, 213 AD2d 933, 934 [1995]).
We further conclude that annulment of the special use permit is required based upon petitioners’ alternative argument that the Board failed to comply with the applicable Town of Richfield Land Use and Building Management Ordinance. Town of Richfield Ordinance § 7.3 (e) provides that special use permits may only be granted if each of eight enumerated conditions are met. While the Board’s resolution granting the special use permit states that it “considered and addressed each of the matters referred to in [the ordinance],” the resolution itself does not provide any explanation or elaboration thereof. Instead, the resolution refers to the document issued by the Board explaining its rationale for the negative declaration under SEQRA. Indeed, some of the issues relevant to the negative declaration under SEQRA and to the special use permit overlap. However, the Board’s explanation of its rationale for the negative declaration does not directly address each of the conditions set forth in the ordinance. We are, therefore, unable to undertake intelligent review of whether the Board’s determination that the project complied with the ordinance was rational and supported by substantial evidence (see generally Matter of Retail Prop. Trust v Board of Zoning Appeals of Town of Hempstead, 98 NY2d 190, 194 [2002]; Matter of Wegmans Enters, v Lansing, 72 NY2d 1000, 1001-1002 [1988]; Troy Sand & Gravel Co., Inc. v Town of Nassau, 101 AD3d 1505, 1509 [2012]).
As a result of the foregoing, we conclude that the Board’s resolution granting the negative declaration must be reinstated, but that the resolution granting the special use permit was properly annulled. We have examined the parties’ remaining contentions — including petitioners’ claims for counsel fees under the Open Meetings Law and FOIL — and find them to be either academic or without merit.
*1354 Peters, P.J., Rose and Garry, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as (1) granted the first cause of action and directed respondent Town of Richfield Planning Board to participate in training sessions concerning the obligations imposed under Public Officers Law article 7 and (2) dismissed the fifteenth cause of action; petition dismissed as to the first cause of action and granted as to the fifteenth cause of action; and, as so modified, affirmed.

. Frigault eventually obtained all of the documents he sought and the only issue on this appeal in connection with the FOIL requests is an application for counsel fees under that law.

. Notwithstanding that respondent Harold F. Ferguson Jr. did not file an answer to the verified petition/complaint or a notice of appeal, we refer to the remaining respondents collectively as respondents.

. According to the report on shadow flicker contained as an attachment to the EAF, that term “refers to the moving shadows that an operating wind turbine casts over an identified receptor at times of the day when the turbine rotor is between the sun and a receptor’s position.”

. We reject petitioners’ arguments that the Board failed to comply with various procedural requirements of SEQRA, as well as its contention that the host community agreement required by the special use permit represented an impermissible conditioned negative declaration (see Matter of Merson v Mc-Nally, 90 NY2d 742, 753 [1997]; Matter of Granger Group v Town of Taghkanic, 77 AD3d 1137, 1143 [2010], lv denied 16 NY3d 781 [2011]; 6 NYCRR 617.2 [h]).

. Nor do we find, under the particular circumstances presented here, that there was a violation of the Open Meetings Law because the meeting was relocated to a community room in a church.