Matter of Adirondack Historical Assn. v Village of Lake Placid/lake Placid Vil., Inc. (2018 NY Slip Op 03194)





Matter of Adirondack Historical Assn. v Village of Lake Placid/lake Placid Vil., Inc.


2018 NY Slip Op 03194


Decided on May 3, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 3, 2018

525242

[*1]In the Matter of ADIRONDACK HISTORICAL ASSOCIATION, Petitioner,
v
VILLAGE OF LAKE PLACID/LAKE PLACID VILLAGE, INC., Respondent.

Calendar Date: March 27, 2018

Before: Egan Jr., J.P., Lynch, Devine, Clark and Mulvey, JJ.


McPhillips, Fitzgerald & Cullum, LLP, Glens Falls (Eric C. Schwenker of counsel), for petitioner.
E. Stewart Jones Hacker Murphy LLP, Troy (Patrick L. Seely Jr. of counsel), for respondent.


Mulvey, J.

MEMORANDUM AND JUDGMENT
Proceeding initiated in this Court pursuant to EDPL 207 to review a determination of respondent condemning two parcels of petitioner's real property for the purpose of constructing a parking garage in connection with a redevelopment project.
In 2017, the Lake Placid Village Board of Trustees (hereinafter the Village Board) began consideration of a plan to redevelop Main Street in the Village of Lake Placid, Essex County. The plan, described as the "Lake Placid Main Street Reconstruction Project," included the acquisition of two vacant parcels of real property owned by petitioner, a not-for-profit corporation, located at 2476-2478 Main Street (hereinafter the
subject property) for the purpose of constructing a public parking garage. The Village Board thereafter reviewed the environmental impacts associated with the redevelopment project under the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]) and adopted a negative declaration of environmental significance in February 2017.
After attempts by the Village Board to negotiate the purchase of the subject property proved unsuccessful, respondent opted to proceed with acquisition under the authority of the Eminent Domain Procedure Law. As a result, the Village Board engaged in a new SEQRA process specifically with regard to the proposed condemnation. Following a public hearing and a [*2]written comment period, and upon review of an environmental assessment form (hereinafter EAF) prepared by an engineering consultant, the Village Board determined that the action would not create the potential for any negative environmental impacts and issued resolutions authorizing condemnation of the subject property. Petitioner thereafter commenced this proceeding challenging the Village Board's determination.
Initially, we reject petitioner's contention that the SEQRA review process was impermissibly segmented. Segmentation is "the division of the environmental review of an action such that various activities or stages are addressed [for purposes of environmental quality review] as though they were independent, unrelated activities, needing individual determinations of significance" (6 NYCRR 617.2 [ag]). While there is no question that condemnation of the subject property for the purpose of constructing a parking garage was related to the broader Main Street redevelopment project, it is equally clear that the segmented review that occurred here was not impermissibly undertaken "for the purpose of circumventing the detailed review called for under SEQRA" (Matter of Forman v Trustees of State Univ. of N.Y., 303 AD2d 1019, 1020 [2003] [internal quotation marks and citation omitted]; see Matter of Saratoga Springs Preserv. Found. v Boff, 110 AD3d 1326, 1328 [2013]; Matter of Friends of Stanford Home v Town of Niskayuna, 50 AD3d 1289, 1290 [2008], lv denied 10 NY3d 716 [2008]). Rather, it took place due to the fact that the Village Board was unaware of its need to exercise its power of eminent domain to condemn the subject property at the time of its SEQRA review with respect to the redevelopment project. Inasmuch as the Village Board "'set[] forth the reasons supporting segmentation and demonstrate[d] that such review is clearly no less protective of the environment'" (Matter of Defreestville Area Neighborhoods Assn. v Town Bd. of Town of N. Greenbush, 299 AD2d 631, 634 [2002], quoting 6 NYCRR 617.3 [g] [1]), we are satisfied that impermissible segmented review did not occur here (see Matter of Saratoga Springs Preserv. Found. v Boff, 110 AD3d at 1328; Matter of Friends of Stanford Home v Town of Niskayuna, 50 AD3d at 1291; Matter of Concerned Citizens for Envt. v Zagata, 243 AD2d 20, 22 [1998], lv denied 92 NY2d 808 [1998]; compare Matter of J. Owens Bldg. Co., Inc. v Town of Clarkstown, 128 AD3d 1067, 1068-1069 [2015]).
We do agree, however, with petitioner's contention that the record fails to establish that the Village Board took the requisite hard look at potential traffic implications associated with the construction of a parking garage on the subject property or to set forth a reasoned elaboration of the basis for its determination that the development of the property would not result in any substantial increase in traffic. Upon review of an eminent domain proceeding, courts are required to determine whether the condemnor's findings and determinations comply with ECL article 8, which is incorporated as part of the required procedures under EDPL article 2 (see EDPL 207 [C] [3]; Matter of Davis Holding Co., LLC v Village of Margaretville, 55 AD3d 1101, 1103-1104 [2008]; Matter of Stefanis v Village of Fleischmanns, 43 AD3d 581, 583 [2007]; Matter of Board of Coop. Educ. Servs. of Albany-Schoharie-Schenectady-Saratoga Counties v Town of Colonie, 268 AD2d 838, 839 [2000]). In assessing compliance with the substantive mandates of SEQRA, we are tasked with reviewing the record to determine whether the Village Board, as the lead agency, "identified the relevant areas of environmental concern, took a hard look at them, and made a reasoned elaboration of the basis for its determination" (Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417 [1986] [internal quotation marks and citation omitted]; see Matter of Gernatt Asphalt Prods. v Town of Sardinia, 87 NY2d 668, 688 [1996]; Matter of WEOK Broadcasting Corp. v Planning Bd. of Town of Lloyd, 79 NY2d 373, 381 [1992]; Matter of City of Mechanicville v Town of Halfmoon, 23 AD3d 897, 900 [2005]). "Literal compliance with both the letter and spirit of SEQRA is required and substantial compliance will not suffice" (Matter of Board of Coop. Educ. Servs. of Albany-Schoharie-Schenectady-Saratoga Counties v Town of Colonie, 268 AD2d at 840 [*3][internal quotation marks, brackets and citations omitted]; see Matter of Dawley v Whitetail 414, LLC, 130 AD3d 1570, 1571 [2015]).
Because acquisition of the subject property was considered an unlisted action, a short form EAF was prepared (see 6 NYCRR 617.6 [a] [3]). The Village Board was thus required to "review the EAF, the criteria contained in [6 NYCRR 617.7 (c)] and any other supporting information to identify the relevant areas of environmental concern; . . . thoroughly analyze the identified relevant areas of environmental concern to determine if the action may have a significant adverse impact on the environment; and . . . set forth its determination of significance in a written form containing a reasoned elaboration and providing reference to any supporting documentation" (6 NYCRR 617.7 [b] [2], [3], [4]). An adverse change in traffic levels is such a potential area of environmental concern (see 6 NYCRR 617.7 [c] [1] [i]).
During both the public hearing and the written comment period, concerns regarding increased traffic congestion and other potential traffic impacts associated with the proposed condemnation were repeatedly voiced. Yet, the record is bereft of any evidence that the Village Board took the requisite hard look at these potential traffic implications. Indeed, the sum total of the proof of the Village Board's "hard look" is its negative response to the question on the EAF as to whether there would be a substantial increase in traffic above present levels — made without articulating a reasoned elaboration for the basis of such determination — and the wholly conclusory statement in its resolution that "[t]here is no significant environmental impact that could not be mitigated with reasonable measures."[FN1] While
respondent claims that an adequate review of the environmental impacts associated with the proposed construction of the parking garage occurred during the Village Board's review of the broader Main Street redevelopment project, without record evidence of any such prior review, there is no indication "of any meaningful investigation into this area of environmental concern" (Matter of Kittredge v Planning Bd. of Town of Liberty, 57 AD3d 1336, 1337-1338 [2008]). In light of this, and given the wholesale failure on the part of the Village Board to set forth a record-based elaboration for its conclusion that the identified traffic concerns were not significant, the SEQRA findings and determinations made in connection with the condemnation of the subject property must be vacated (see Matter of Baker v Village of Elmsford, 70 AD3d 181, 190 [2009]; Matter of Kittredge v Planning Bd. of Town of Liberty, 57 AD3d at 1338; Matter of Fleck v Town of Colden, 16 AD3d 1052, 1054 [2005]; Matter of Board of Coop. Educ. Servs. of Albany-Schoharie-Schenectady-Saratoga Counties v Town of Colonie, 268 AD2d at 840; Matter of Niagara Mohawk Power Corp. v Green Is. Power Auth., 265 AD2d 711, 712 [1999], appeal dismissed 94 NY2d 891 [2000]; Matter of West Branch Conservation Assn. v Planning Bd., Town of Ramapo, 177 AD2d 917, 918 [1991]).
Petitioner's remaining contention has been rendered academic by our determination.
Egan Jr., J.P., Lynch, Devine and Clark, JJ., concur.
ADJUDGED that the determination is annulled, with costs, and petition granted.



Footnotes

Footnote 1: At oral argument, counsel for respondent conceded that this record is silent as to an analysis of traffic impacts, either as part of its "hard look" or with respect to a "reasoned elaboration" of its negative declaration in the EAF.