Matter of PSC, LLC v City of Albany Indus. Dev. Agency (2021 NY Slip Op 06907)





Matter of PSC, LLC v City of Albany Indus. Dev. Agency


2021 NY Slip Op 06907


Decided on December 9, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 9, 2021

532952
[*1]In the Matter of PSC, LLC, Petitioner,
v
City of Albany Industrial Development Agency et al., Respondents.

Calendar Date:October 13, 2021

Before:Egan Jr., J.P., Lynch, Pritzker and Colangelo, JJ.

Tabner, Ryan & Keniry, LLP, Albany (Brian M. Quinn of counsel), for petitioner.
Hodgson Russ LLP, Albany (Charles W. Malcomb of counsel), for City of Albany Industrial Development Agency, respondent.
Young/Sommer LLC, Albany (Joseph F. Castiglione of counsel), for Capitalize Albany Corporation and another, respondents.



Pritzker, J.
Proceeding initiated in this Court pursuant to EDPL 207 to review a determination of respondent City of Albany Industrial Development Agency condemning 11 parcels of petitioner's real property for a mixed-use redevelopment project.
In August 1988, petitioner's predecessors in interest entered into a lease agreement whereby they agreed to lease 10 of their properties "for parking and or other lawful purpose[]" at a base rate of $8,500 per month with such rate to increase by $1,000 per month every five years for 50 years. Eventually, the lease was assumed by the Albany Convention Center Authority, and it was then transferred to respondent Liberty Square Development, LLC. Liberty Square is a wholly-owned subsidiary of respondent Capitalize Albany Corporation, a municipal corporation that "serv[es] as the City of Albany's economic development arm." In 2019, Capitalize Albany received a grant of over $10 million in order to acquire real estate across eight acres of land in an area of the City of Albany known as Liberty Square — an area that Capitalize Albany describes as blighted and economically underutilized — in order to carry out an economic redevelopment plan involving a mixed-use development concept called for by the Capital Region Economic Development Council's Capital 20.20 regional development strategy. Capitalize Albany was able to acquire all but 0.88 acre of land in that area through private transactions. The remaining 0.88 acre consisted of 11 parcels of petitioner's property (hereinafter the properties) that are used for parking — 10 of which were the subjects of the aforementioned lease. Despite attempts to purchase the properties, Capitalize Albany was unable to do so.
Capitalize Albany submitted an application to respondent City of Albany Industrial Development Agency (hereinafter the Agency) requesting that the Agency use its power of eminent domain to acquire the properties (see General Municipal Law § 903-a). The Agency held a public hearing via Zoom, at which it presented the project and accepted comments and documents from the public, including petitioner's counsel. In January 2021, the Agency approved the use of eminent domain to acquire the properties for Capitalize Albany and Liberty Square, issuing a determination and findings resolution and a negative declaration pursuant to the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]) in support of its decision. Petitioner commenced this proceeding in this Court pursuant to EDPL 207 seeking to annul the Agency's determination, and respondents answered.
We begin by examining petitioner's claims that the Agency's determination should be annulled due to several procedural errors: (1) that the Agency relied on additional evidence, a short environmental assessment form, after closing the public hearing; (2) that the Agency closed the public hearing before issuing a SEQRA determination; and (3) that the hearing was conducted in violation of the Public [*2]Officers Law and Executive Order 202.1 because it took place on Zoom and did not provide an adequate way for the public to view or listen to the meeting. It is well established that the condemnor is required to make its determination in accordance with the statutory procedures set forth in EDPL article 2 and ECL article 8, and this Court's review of a condemnor's determination includes whether such procedures were followed (see EDPL 207 [C] [3]; Matter of Johnson v Town of Caroga, 162 AD3d 1353, 1354 [2018]). Nevertheless, it is the party challenging the condemnation who "bear[s] the burden of establishing that the determination . . . was violative of any of the applicable statutory criteria" (Matter of Johnson v Town of Caroga, 162 AD3d at 1354 [internal quotation marks and citations omitted]; see Matter of Rafferty v Town of Colonie, 300 AD2d 719, 721 [2002]).
Initially, petitioner's contention that the Agency received the short environmental assessment form and considered it after the public hearing is belied by the record, which shows that the form was submitted as part of Capitalize Albany's application to the Agency, well in advance of the public hearing. Second, there is no statutory requirement that a SEQRA determination be made in advance of the public hearing, and, in fact, such declarations appear to be frequently made alongside the determination and findings of public benefit — after the public hearing (see e.g. Matter of Johnson v Town of Caroga, 162 AD3d at 1353-1354; Matter of Davis Holding Co., LLC v Village of Margaretville, 55 AD3d 1101, 1102 [2008]). Lastly, although agencies are required to make "reasonable efforts to ensure that meetings are held in an appropriate facility [that] can adequately accommodate members of the public who wish to attend such meetings" (Public Officers Law § 103 [d]), the Agency was permitted to hold a hearing via Zoom, as laws relating to the attendance of in-person meetings were suspended in light of the COVID-19 pandemic so long as "the public ha[d] the ability to view or listen to such proceeding and that such meetings [we]re recorded and later transcribed" (Executive Order [A. Cuomo] No. 202.1 [9 NYCRR 8.202.1]), which was done here.
Petitioner also asserts that the taking was invalid for several alternative reasons. As relevant here, "[i]n the context of [an] EDPL 207 proceeding, this Court's scope of review is limited to whether the proceeding was constitutional, whether the acquisition was within the condemnor's statutory authority . . . and whether a public use, benefit or purpose will be served by the proposed acquisition" (Matter of Johnson v Town of Caroga, 162 AD3d at 1354 [internal quotation marks and citations omitted]; see Matter of 225 Front St., Ltd. v City of Binghamton, 61 AD3d 1155, 1156 [2009]). The party challenging the condemnation "bear[s] the burden of establishing that the determination was without foundation and baseless, or that it was violative of the applicable [*3]statutory criteria" (Matter of Johnson v Town of Caroga, 162 AD3d at 1354 [internal quotation marks and citations omitted]; see Matter of Rafferty v Town of Colonie, 300 AD2d at 721).
Petitioner first argues that the taking was excessive and unnecessary because there was no evidence that the properties are in a state of blight or disrepair or that the taking of petitioner's 0.88 acre was necessary to develop the remaining seven acres already owned by Liberty Square. Petitioner also argues that the public notice was too speculative to be proper because Capitalize Albany did not yet have any specific plans for redeveloping the area and that, without knowing the specific manner in which the properties will be used, it is impossible to determine whether they will be used for a public purpose. "Upon judicial review, if an adequate basis for a determination that a public purpose [will be] served is shown and the objector cannot show that the determination was without foundation, the agency's determination should be confirmed" (Matter of Board of Coop. Educ. Servs. of Albany-Schoharie-Schenectady-Saratoga Counties v Town of Colonie, 268 AD2d 838, 841 [2000] [internal quotation marks, brackets and citations omitted]). What constitutes a public purpose is defined broadly and "encompasses any use which contributes to the health, safety, general welfare, convenience or prosperity of the community" (Matter of 225 Front St., Ltd. v City of Binghamton, 61 AD3d at 1157 [internal quotation marks and citations omitted]; accord Matter of Johnson v Town of Caroga, 162 AD3d at 1355). Further, "[a]reas of economic underdevelopment and stagnation may be considered blighted so as to support the taking of vacant and underutilized properties located therein" (Matter of Court St. Dev. Project, LLC v Utica Urban Renewal Agency, 188 AD3d 1601, 1602 [2020]).
In support of the application, Capitalize Albany submitted a comprehensive "Concept Plan Report," which was prepared to provide "an analysis of the fiscal, economic, and other impacts anticipated to be catalyzed by a conceptual plan for redevelopment" in the Liberty Square area (hereinafter the report). The report said that, since the properties were not contiguous but were centrally located within the planned project site, "they are necessary to achieve the full economic, community and other benefits under" the conceptual plan. The report noted that the current site was "dominated by surface parking lots in significant disrepair" and contained "long-vacant buildings which have been flagged as 'unsafe' for emergency responders to enter" and that the area has been known as "The Dead Zone" or "the parking lot district." Further, the report examined in detail each of the seven blocks that make up the planned project area and it was noted that the parking lots and buildings on all blocks were "in poor condition" and buildings were in significant disrepair, including one building that had to be demolished "following [*4]a catastrophic structural failure of the roof." The report noted that "[t]he area currently suffers from economic underdevelopment and stagnation, as the current conditions/use have existed for decades, and the site utilization is far below that which can be accomplished on the [b]lock as part of the conceptual redevelopment." A 14-year review of the area was conducted using Google Earth, which found that "on any given day, only . . . between 6% and 31% of the land area" was actively utilized.
The report set forth a "hybrid . . . redevelopment concept," which considered, among other things, a development consisting of approximately 300 residential units, a 100-room hotel, approximately 16,000 square feet of retail space, approximately 55,000 square feet of commercial office space, a 450-space parking garage and an open/park space. The report concluded that approximately 579 new residents would be brought to the downtown district by the development with annual spending of approximately $13.5 million, approximately 572 new jobs would be created that would be within walking distance to nearby economically distressed areas. In addition, the hotel would generate $288,259 annually in City revenues, the property would generate approximately $2.2 million annually in tax revenue, the required infrastructure investment would benefit residents, and businesses and a parking garage would address parking demands. The report noted that a request for proposals on development of this area had previously been made, but no "legitimate" proposals were received "due in large part to the challenges of obtaining full site control." At the public hearing, the Agency displayed two maps that highlighted the properties and showed that they were centrally located to the project site. Letters of support for the project were sent to the Agency ahead of the hearing from members of the community, including from Daniel McCoy, the Albany County Executive, and Kathy Sheehan, the Mayor of Albany.
Petitioner, through counsel, was given an opportunity to speak at the public hearing and objected to the eminent domain proceeding because petitioner's owners, who are members of the Chambers family, were dependent on income derived through these properties. Petitioner objected to the characterization of the properties as blighted, because they were actively used for the public purpose of downtown parking. Petitioner characterized Capitalize Albany as a "flipper" that meant to acquire the properties and then sell them to a private developer.
Given the foregoing, we discern no error in the Agency's determination that the properties are in a state of blight, that the taking of petitioner's 0.88 acre was necessary to develop the remaining seven acres already owned by Liberty Square, and that said development would serve a public purpose. As to blight, the Agency's determination that the Liberty Square area is blighted is supported by the record, which indicated that the surface [*5]parking lots, including the properties, were in states of significant disrepair and the nearby buildings presented a safety risk (see Matter of Court St. Dev. Project, LLC v Utica Urban Renewal Agency, 188 AD3d at 1602). Further, the Google Earth study found that, at all times over the prior 14 years, less than 40% of the land was utilized. In contrast, the proposed development would create new jobs, provide new apartments and create new business opportunities, all of which would create an increased tax base. Therefore, the Agency had support for its determination that the taking served a valid public purpose by addressing blight and economic underdevelopment, and petitioner failed to show otherwise (see Matter of United Ref. Co. of Pa. v Town of Amherst, 173 AD3d 1810, 1811 [2019], lv denied 34 NY3d 913 [2020]; Matter of Keegan v City of Hudson, 23 AD3d 742, 743 [2005], lv denied 6 NY3d 705 [2006]). Further, the Agency is not required to know the specific redevelopment plan in order to use its power of eminent domain and may condemn the property to gain full title in order to permit economic redevelopment (see Matter of Court St. Dev. Project, LLC v Utica Urban Renewal Agency, 188 AD3d at 1602-1603).
Further, the Agency did not exceed its broad discretion in determining that the taking was necessary. Although a condemnor cannot use eminent domain to take "property not necessary to fulfill the public purpose, it is generally accepted that the condemnor has broad discretion in deciding what land is necessary to fulfill that purpose" (Matter of Rafferty v Town of Colonie, 300 AD2d at 723; see Matter of Village of Ballston Spa v City of Saratoga Springs, 163 AD3d 1220, 1226 [2018]). In making its determination, the Agency expressly determined that taking all 11 parcels was necessary in order to fully develop the project site, particularly given that seven parcels constituted the entirety of a centrally located block. The Agency believed that, given the location and condition of this particular site, development at another site in an area of lesser priority would not be appropriate at this time. Although the lease permitted new developments on the properties, it also stated that petitioner would own any buildings built upon the properties, which would prevent Capitalize Albany and Liberty Square from gaining the full site control necessary to complete the project. Given the difficulty of developing the site without the properties, the Agency acted within its discretion in deciding that it was necessary to condemn the properties (see Matter of United Ref. Co. of Pa. v Town of Amherst, 173 AD3d at 1811-1812; Matter of Village of Ballston Spa v City of Saratoga Springs, 163 AD3d at 1226-1227; compare Matter of Davis Holding Co., LLC v Village of Margaretville, 55 AD3d at 1104-1105).
Petitioner also argues that the properties cannot be taken pursuant to the prior public use doctrine because they are used for public parking. However, the prior [*6]public use doctrine is inapplicable because petitioner does not have the power of eminent domain, nor has it been delegated such power (see Westchester Cr. Corp. v New York City School Constr. Auth., 286 AD2d 154, 158 [2001], affd 98 NY2d 298 [2002]; Matter of Board of Educ., Union Free School Dist. No. 2 v Pace Coll., 27 AD2d 87, 90 [1966]). Even if it were applicable, the condemnation will not "interfere with or destroy the public use" of the properties for public parking, because the proposed redevelopment plan includes building a new parking garage (Matter of Village of Ballston Spa v City of Saratoga Springs, 163 AD3d at 1222 [internal quotation marks and citations omitted]; see Matter of Board of Coop. Educ. Servs. of Albany-Schoharie-Schenectady-Saratoga Counties v Town of Colonie, 268 AD2d at 841-842). We find equally unavailing petitioner's assertion that the taking was commercial or pretextual inasmuch as "where the public good is expected to be enhanced by a project, it does not matter that private interests might be benefitted" (Matter of Goldstein v New York State Urban Dev. Corp., 64 AD3d 168, 184 [2009] [internal quotation marks, brackets and citation omitted], affd 13 NY3d 511 [2009]). As noted previously, the Agency had a public purpose for this taking, and the fact that the entire project area will at some point be transferred into private ownership does not negate that public purpose (see Matter of Goldstein v New York State Urban Dev. Corp., 13 NY3d 511, 523-524 [2009]; compare Matter of 49 WB LLC v Village of Haverstraw, 44 AD3d 226, 243-244 [2007]).
Finally, petitioner argues that the Agency did not follow proper procedure when making its SEQRA determination because it did not include an analysis of its redevelopment plans, did not consider the potential impacts of overdevelopment and improperly segmented the review process by failing to discuss the redevelopment plans in relation to petitioner's property. "Our review of [the Agency's] SEQRA determination 'is limited to whether the determination was made in accordance with lawful procedure and whether, substantively, the determination was affected by an error of law or was arbitrary and capricious or an abuse of discretion'" (Matter of Court St. Dev. Project, LLC v Utica Urban Renewal Agency, 188 AD3d at 1603, quoting Akpan v Koch, 75 NY2d 561, 570 [1990]). "Segmentation is the division of the environmental review of an action such that various activities or stages are addressed for purposes of environmental quality review as though they were independent, unrelated activities, needing individual determinations of significance" (Matter of Adirondack Historical Assn. v Village of Lake Placid/Lake Placid Vil., Inc., 161 AD3d 1256, 1257 [2018] [internal quotation marks, brackets and citation omitted]; see Matter of Court St. Dev. Project, LLC v Utica Urban Renewal Agency, 188 AD3d at 1603).
To that end, the Agency's SEQRA resolution determined that this project, consisting [*7]solely of the acquisition of the properties, was an "unlisted" action and that it would "not have a significant adverse impact on the environment." The Agency evaluated whether this would constitute impermissible segmentation and determined that it would not, because the redevelopment project was too "speculative and hypothetical" at this point as it depended on "future steps and proposals that have yet to be developed." The Agency noted that, once a final project was approved, a complete SEQRA review would be completed at that time. The Agency further reviewed the criteria for determining significance set forth in 6 NYCRR 617.7 (c) and found that the acquisition will not a have significant adverse impact on the environment. Regarding the historical resources of the area, the Agency noted that those existed in the area and preservation of these would need to be considered as part of any future development plans, but that there would be no negative effects at this time caused by the acquisition. Thus, although the review was segmented, it was properly segmented in this circumstance because it was not done to circumvent review under SEQRA but to allow for a complete review later (see Matter of Court St. Dev. Project, LLC v Utica Urban Renewal Agency, 188 AD3d at 1603; Matter of Adirondack Historical Assn. v Village of Lake Placid/Lake Placid Vil., Inc., 161 AD3d at 1257-1258). When considering the acquisition itself, the Agency "identified the relevant areas of environmental concern, took a hard look at them, and made a reasoned elaboration of the basis for its determination" that the acquisition would not have a negative environmental impact (Matter of Johnson v Town of Caroga, 162 AD3d at 1356 [internal quotation marks and citations omitted]; see Matter of Davis Holding Co., LLC v Village of Margaretville, 55 AD3d at 1104; compare Matter of Adirondack Historical Assn. v Village of Lake Placid/Lake Placid Vil., Inc., 161 AD3d at 1259-1260). We have reviewed petitioner's remaining contentions and have found them to be without merit.
Egan Jr., J.P., Lynch and Colangelo, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.